**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| PAMELA SWORD-FRAKES, | ) | 2:04-CV-01718-BES-PAL |
| Plaintiff, | ) ) ) | **ORDER** |
| v. | ) ) | |
| CITY OF NORTH LAS VEGAS, and NORTH LAS VEGAS POLICE DEPT., | ) ) ) | |
| Defendant. | ) ) | |

Currently before this Court is Defendants' Motion for Summary Judgment (#23), which was filed on April 24, 2006. Plaintiff filed a Response (#24) on May 8, 2006, and Defendant filed a Reply (#27) on June 5, 2006.

**I. Background**

*A.     Factual History.*

On or about March of 1991, Plaintiff Pamela Sword-Frakes ("Plaintiff") was hired by Defendant City of North Las Vegas Police Department ("NLVPD"). Plaintiff worked in the D.A.R.E. (Drug Abuse Resistance Education) unit. On July 17, 2002, Sword-Frakes settled a complaint of a sexually hostile work environment, releasing all claims against the City and NLVPD occurring prior to July 17, 2002.

While Plaintiff's complaint contains numerous allegations against Defendants, the only specific facts described by Plaintiff concerning a hostile work environment are two incidents occurring after July 17, 2002. These incidents were as follows: (1) Sergeant Crespo ordering Plaintiff to stand and turn around so that he could inspect her uniform during a uniform inspection; and (2) Al Noyola forced her to shake hands with him.

In January of 2002, Plaintiff's supervisor informed Plaintiff and other crime prevention personnel through an interoffice memorandum that a dress code policy was in place and that all personnel were subject to inspection and that uniforms and equipment must conform to NLVPD specifications.  The supervisor also stated that clothing that did not fit properly or was form fitting was not acceptable.  On July 17, 2002, Plaintiff was seen violating the dress code policy and was written up for her failure to adhere to the dress code policy.

During a subsequent uniform inspection, Plaintiff claims that Crespo made her stand and turn around so he could inspect her.  Plaintiff believes that she was asked to turn around so that Crespo could look at her body.  Plaintiff also claims that during this inspection, Crespo made comments about her ill-fitting, tight clothing.  Plaintiff claims that this conduct was sexual harassment.

The second unwelcome sexual advance complained of by Plaintiff is that Noyola forced her to shake hands with him.  Plaintiff does not describe anything other than a handshake, but believed it to be an unwelcome sexual advance because, "that's what it felt like."

NLVPD's policy on sexual harassment was that it must be reported immediately to the Director of Human Resources.  Failure to make such a report could be deemed a waiver by the employee.  Plaintiff does not remember if she filled out a harassment complaint against Crespo or Noyola.  On or about May 26, 2004, Plaintiff filed a complaint with the EEOC for sexual harassment and retaliation.

In March of 2005, Plaintiff was diagnosed as having a mood disorder.   Plaintiff's therapist stated that due to the disorder, Plaintiff was unable to effectively and responsibly perform her job duties as a police officer.  The therapist stated that Plaintiff's chronic mood disorder resulted in her having difficulty in establishing and maintaining cooperative working relationships with colleagues.  Thereafter, Plaintiff received a medical or disability retirement.  Plaintiff's last day of work was around March 11, 2005.

**B.     Procedural History.**

On December 17, 2004, Plaintiff filed the Complaint (#1) in this action, alleging

2

discrimination and harassment in violation of Title VII, Retaliation and Breach of Contract. On January 25, 2005, Defendants filed a Motion requesting partial dismissal and a Motion to Strike (#5). The Court granted the Motion on July 18, 2005, with respect to the claims of Retaliation and Breach of Contract, but allowed the Hostile Work Environment Claim to proceed (#9).

## II. Analysis

Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Any dispute regarding a material issue of fact must be genuine—the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Id. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The burden of proving the absence of a genuine issue of material fact lies with the moving party; accordingly, "[t]he evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in the light most favorable to the nonmoving party." Id. (citing Liberty Lobby, 477 U.S. at 255); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998). Nevertheless, if the moving party presents evidence that would call for judgment as a matter of law, then the opposing party must show by specific facts the existence of a genuine issue for trial. Liberty Lobby, 477 U.S. at 250; FED. R. CIV. P. 56(e).

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response must set forth specific facts showing that there is a genuine issue for trial.. Fed. Rule Civ. Proc. 56(e). To demonstrate a genuine issue of material fact, the nonmoving party "must do more than simply show there is some

1  metaphysical doubt as to the material facts." Matsushita Elec. Indus., 475 U.S. at 586.
2  Conclusory allegations that are unsupported by factual data cannot defeat a motion for
3  summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

4  In her Complaint, Plaintiff claims that she has been subjected to a sexually hostile
5  and/or offensive work environment by Defendants because of their discrimination and/or
6  harassment against her. During her deposition, Plaintiff identified the discriminatory conduct
7  as the uniform inspection by Crespo and the handshake with Noyola.

8  To prevail on a hostile work environment sexual harassment claim, the plaintiff must
9  show that her work environment was both subjectively and objectively hostile; that is, she must
10 show that she perceived her work environment to be hostile, and that a reasonable person in
11 her position would perceive it to be so. Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d
12 1027, 1034 -1035 (9th Cir. 2005); Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 871-72
13 (9th Cir. 2001). The plaintiff also must prove that "any harassment took place 'because of
14 sex.'" Dominguez, 424 F.3d at 1034-1035; Nichols, 256 F.3d at 872.

15 In analyzing whether the alleged conduct created an objectively hostile work
16 environment, the Court must assess all the circumstances, "including the frequency of the
17 discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a
18 mere offensive utterance; and whether it unreasonably interferes with an employee's work
19 performance." Dominguez, 424 F.3d at 1034-1035; Clark County School District v. Breeden,
20 532 U.S. 268, 270-71, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (internal quotation marks and
21 citation omitted). Simple teasing, offhand comments, and isolated incidents (unless extremely
22 serious) will not amount to discriminatory changes in the terms and conditions of employment.
23 Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)
24 (citation omitted).

25 While Plaintiff has stated that she perceived her work environment to be hostile, the
26 Court finds that a reasonable person in Plaintiff's position would not perceive the work
27 environment to be hostile and that the alleged conduct did not create an objectively hostile
28 work environment. Plaintiff described only two incidents that she claimed were discriminatory

and sexual in nature, the uniform inspection and the handshake. Plaintiff did not claim that these incidents occurred numerous times or repeatedly and therefore, Plaintiff has not demonstrated that the offending conduct was frequent.

Furthermore, the Court finds that the alleged conduct was not physically threatening, humiliating or severe to create a hostile work environment. Specifically, Noyola's conduct in shaking Plaintiff's hand was not sufficiently severe to support a finding of sexual discrimination. Similarly, courts have held that staring at an employee during a uniform inspection does not rise to the level or harassment or create a sufficient inference of a hostile work environment. *See*, Hilt-Dyson v. City of Chicago, 282 F.3d 456, 463-464 (7th Cir. 2002).   In Hilt-Dyson, a female police officer alleged that on two occasions her supervisor rubbed her back, each lasting less than one minute, and in addition singled her out during a uniform inspection and stared at her chest. *See,* Hilt-Dyson, 282 F.3d at 463-64. In determining that these incidents did not create an objectively hostile work environment and were not severe and pervasive, the Seventh Circuit recognized the unique aspect of a police department uniform inspection, stating:

> "...the directions were given as part of a uniform inspection-an event that by its nature involves scrutiny of an officer's clothing and equipment in an effort to ensure that the [department's] officers meet uniform requirements and are prepared to fulfill their responsibilities. ...Discipline in police departments is quasi-military in nature and sworn officers expect to participate in inspections, drills and other activities that create superior-subordinate encounters not found in civilian occupations. Many of these encounters, especially inspections, are often unpleasant and, in the eyes of the subordinate, demeaning." 282 F.3d at 464.

Nevertheless, the Seventh Circuit concluded that even if it were to accept Ms.Hilt-Dyson's assessment of the situation, it could not conclude that the incident was so severe or pervasive to constitute sexual harassment. Id. at 463-464.

As with the Hilt-Dyson case, the uniform inspection in this case was not so severe or pervasive as to classify Plaintiff's situation as a hostile work environment. Police officers in the NLVPD knew that they would be subject to uniform inspections. Police officers also knew that they were required to wear an appropriately fitting uniform as part of their job requirement. This conduct cannot be characterized as physically threatening, humiliating or an effort to

demean Plaintiff on account of her sex.

Finally, the alleged discriminatory conduct did not unreasonably interfere with Plaintiff's work performance. Plaintiff has not brought forth any evidence that her job as a D.A.R.E. officer became more difficult to do because of the uniform inspection or the handshake. Furthermore, simple teasing, offhand comments and isolated incidents, unless extremely serious, do not amount to discriminatory changes in the terms and conditions of employment. Clark County, 532 U.S. at 271.

Plaintiff raises many arguments in her Opposition and Complaint about other alleged hostile treatment she was made to suffer at work. However, these allegations are not supported by factual evidence. As stated above, the nonmoving party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c). These unsupported conclusory allegations cannot defeat a motion for summary judgment. Taylor, 880 F.2d at 1045.

Accordingly, Defendants' Motion for Summary Judgment (#23) on Plaintiff's hostile and/or offensive work environment claim is granted.

### III. CONCLUSION

Based on the foregoing,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#23) is granted.

DATED: This 22nd day of September, 2006.

_____
UNITED STATES DISTRICT JUDGE